MUTUAL LIFE INS. CO. OF NEW YORK v. ROTHSCHILD et al.

(Supreme Court, Special Term, New York County.   May, 1916.)

1. MORTGAGES ⬅⬆556—COVENANTS—UNCONSCIONABLE COVENANTS.

Though a mortgage securing a bond authorized the mortgagee, in case the mortgagor conveyed the property, to release all security and yet hold the mortgagor,. the obligor of the bond, such provision will not avoid the mortgage, and allow the mortgagor to escape a deficiency judgment; the mortgagee not having released any of the security after the mortgagor's conveyance.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1592–1595, 1597;  Dec. Dig. ⬅⬆556.]

2. MORTGAGES ⬅⬆306—CONSTRUCTION—LIABILITY OF MORTGAGOR.

A bond and mortgage securing a loan provided that the obligation should remain in full force until actual payment, and that on transfer of any of the property mortgaged, and in case of an agreement between any owners of the mortgaged property and the obligees, modifying the terms of payment, and if any part of the mortgaged property should be released from the mortgage without the consent of the mortgagors, the mortgagors should continue liable for sums secured according to extension or modification, and notwithstanding delivery of releases by the obligees.   The time of payment was once extended at the request of the original mortgagors, and after the conveyance time of payment was again extended; the rate of interest being increased.   Held, that such accommodations did not discharge the mortgagors from liability; the covenant that extension agreements should not discharge the mortgagors not being limited to the original extension agreement.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 890–896; Dec. Dig. ⬅⬆306.]

3. MORTGAGES ⬅⬆558—LIABILITY OF PARTIES—CONSTRUCTION.

Where mortgages contained many provisions relating to acts of the mortgagors, such as the insuring of the premises and the like, a grantee of the mortgagor, who, in consideration of an extension of the time of payment, agreed to comply with the conditions of the mortgage, did not become liable for payment of the principal sum, so that, on foreclosure, deficiency judgment could be rendered against her; the provision as to complying with the conditions of the mortgage obviously relating to affirmative acts by the grantee.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 1596; Dec. Dig. ⬅⬆558.]

Action by the Mutual Life Insurance Company of New York against Eugenie Rothschild and others.   Judgment for plaintiff against all defendants save Lily D. Wicks.

Frederick L. Allen, of New York City (Charles L. Griffin and Ralph F. Smith, both of New York City, of counsel), for plaintiff.

Heymann & Herman, of New York City (Everett B. Heymann and Jacob Schnebel, both of New York City, of counsel), for defendants Rothschild.

Edward S. Clinch, of New York City, for defendant Wicks.

GIEGERICH, J.   In this action, brought to foreclose a mortgage, questions are raised as to the liability to a deficiency judgment, if any deficiency results, of various defendants who were former owners of the property under foreclosure, or who are representatives of one of

the original bondsmen. The material facts, briefly stated, are as follows:

On January 25, 1899, the defendant Eugenie Rothschild and her husband, Ludwig Rothschild, now deceased, but whose executors are joined as defendants in the action, borrowed from the plaintiff $60,000, payable in five years, with interest at 4 per cent., and executed and delivered their bond and mortgage, the bond containing the following provision:

"It is expressly understood and agreed by and between the parties hereto that this obligation shall be and remain in full force and effect and in no wise be impaired until the actual payment of said sum to said obligees. And in case of a sale or transfer of any property embraced in a mortgage collateral to this bond, and in case of any agreement or stipulation between any owner or owners of said mortgaged property and the said obligees, extending the time or modifying the terms of payment above recited, and in case any part or parts of said mortgaged property are released from the lien of said mortgage by said obligees, without first having obtained the consent thereto of said obligors, their heirs, executors, administrators, successors, or assigns, the above-mentioned obligors shall continue liable to pay the sum above secured according to the terms of any such agreement of extension or modification and notwithstanding the delivery of any such release or releases, unless expressly released and discharged in writing by the above named obligees."

At the time of the execution and delivery of such bond and mortgage the defendant Eugenie Rothschild was the owner in fee simple of the mortgaged premises. On or about January 25, 1904, the said Eugenie Rothschild and Ludwig Rothschild, after reducing the mortgage debt to $55,000, made an extension agreement with the plaintiff, bearing date January 11, 1904, whereby the time of payment was extended another five years, to January 25, 1909, and the rate of interest increased to 4½ per cent. By deed bearing date August 16, 1904, the defendant Eugenie Rothschild conveyed the mortgaged premises to Julia D. Dresser, Fannie D. Erhart, and the defendant Lily D. Wicks, subject to the aforesaid mortgage. On or about January 2, 1909, the plaintiff made an agreement with said Julia D. Dresser, Fannie D. Erhart, and the defendant Lily D. Wicks, bearing date January 2, 1909, that the time of payment of the mortgage debt should be extended to January 15, 1911, the rate of interest continuing at 4½ per cent., and by that agreement, after agreeing to pay the principal sum and interest, they further agreed "to comply with the other terms and conditions of said bond and mortgage," referring to the original bond and mortgage of January 25, 1899. On October 11, 1910, the premises were conveyed by the said Julia D. Dresser, Fannie D. Erhart, and the defendant Lily D. Wicks to the defendant Wyckoff Holding Company, subject to the said mortgage. The said two co-owners, with the defendant Wicks, were originally made defendants herein; but the action was discontinued against them, because personal service could not be made upon them. On or about April 24, 1911, $5,000 having in the meantime been paid, the plaintiff made an agreement with the Wyckoff Holding Company, bearing date April 24, 1911, extending the time of payment of the $50,000 balance to January 15, 1912, with interest at 5 per cent.; the agreement further providing that a privilege of prepayment theretofore existing was revoked, and further binding the Wyckoff Holding

Company to pay the principal and interest of the debt and "to comply with the other terms and conditions of said bond and mortgage."

Two distinct questions are presented. One is whether the defendants Eugenie Rothschild and the executors of the last will and testament of Ludwig Rothschild, deceased, are liable to a personal judgment, if any deficiency results on the sale; and, second, whether the defendant Lily D. Wicks is so liable. It is conceded that at the time of the various extensions the value of the mortgaged property was in excess of the respective amounts due on the mortgage at the time of such extensions, and it is recognized by all parties that, unless the provisions of the original bond and the various extension agreements above set forth preserve and continue the liability of the defendants Eugenie Rothschild and the executors of the last will and testament of Ludwig Rothschild, deceased, and the defendant Wicks, the respective extension agreements made with subsequent owners of the property exonerate them from personal liability.

[1, 2] I will first discuss the question of the liability of the defendants Eugenie Rothschild and the executors of the last will and testament of Ludwig Rothschild, deceased. It is argued on their behalf that the provisions of the bond are unconscionable, and that a court of equity will not enforce them. In this connection it is pointed out that the mortgagee is given power by such provisions of the bond to release anything short of the whole of the mortgaged premises without receiving any payment whatever, and that the Rothschilds would nevertheless continue liable for the payment of the entire principal sum, although substantially deprived of all recourse to recoup themselves against the mortgaged property. I do not think, however, that weight should be given to this particular argument, because as a matter of fact no claim is made that the plaintiff has released any portion of the mortgaged premises, so that the persons liable on the bond will still have the benefit of the value of the original mortgaged property intact whatever that value may turn out to be.

Another point made on behalf of the same defendants is that the extension agreement made by them nullified the above quoted provisions of the bond. The argument is made that the consideration for the elimination of those provisions was the increase in the interest rate from 4 to 4½ per cent. In my view, however, the extension agreement did not have the effect of superseding the original agreement contained in the bond, but was limited in its operation to changing only such portions of the original agreement as it applied to, leaving the other portions unaffected. This view is somewhat strengthened by the fact that the extension agreement provides that "nothing herein contained shall * * * impair any condition in said bond and mortgage." On behalf of the defendants it is pointed out that this provision is limited to conditions, and does not apply to covenants, and that the provision in the bond upon which the plaintiff relies is not a condition, but is a covenant. Even if the question were to be disposed of on this narrow ground, I do not think it could be successfully claimed that the said provision in the bond is a covenant as distinguished from a condition. The attorneys who advance this distinction themselves

recognize that it is not a clear-cut one, because they state that the provision in question might perhaps be better defined as a stipulation. But, quite apart from whatever meaning should be given to the clause now under discussion, and if that clause were not contained in the extension agreement at all, I can see no reason for holding that the said provision in the bond was nullified by the extension agreement.

It is also insisted that the words "any agreement or stipulation between any owner or owners of the said mortgaged property and the said obligees extending the time or modifying the terms of payment above recited" contemplate only a single extension agreement and not an indefinite succession of such agreements, and that after the first extension agreement was executed (being the one executed by the Rothschilds on or about January 25, 1904) the operation of that provision of the bond was exhausted, and that the subsequent extension agreements executed by later owners were not embraced within the meaning of the bond, and consequently that the execution of such extension agreements without the knowledge and consent of the Rothschilds exonerated them from personal liability. I feel compelled also to hold against the defendants on this proposition and think the provision referred to means any and every agreement.

Various other arguments are made on behalf of the defendants Eugenie Rothschild and the executors of the last will and testament of Ludwig Rothschild, deceased, but they need not be discussed, because they proceed upon the assumption that the extension agreements given by subsequent owners were given without the consent of the Rothschilds; but, as above shown, my conclusion is that the Rothschilds by the original agreement in the bond consented in advance to whatever extension agreements might thereafter be made between any owner of the property and the plaintiff.

[3] Coming now to the question of the personal liability of the defendant Lily D. Wicks, a different situation is presented. She was not a party to the original bond, and never gave any bond, and none of its provisions are operative against her, except such provisions, if any, as were made operative against her by the extension agreement which she entered into with the plaintiff. By that extension agreement she and the others who made the agreement with her, but who, as above stated, are not now defendants in this action, agreed "to pay said principal sum and interest as above set forth and to comply with the other terms and conditions of said bond and mortgage." Now, in addition to the payment of principal and interest, there were other things which the bond or mortgage required the owner of the property to do, such as providing insurance, and in my opinion the fair construction of the extension agreement limits the obligation of the defendant Wicks to such provisions of the bond and mortgage as called for some affirmative action on her part. Otherwise a broader meaning would be given to the word "comply" than is warranted. The plaintiff's counsel would construe that word as though it had the passive meaning of to be bound by. But, specially as the provisions of the bond in question are unusual, I think it should be held that the defendant Wicks is not bound by those unusual provisions in the ab-

sence of words in the extension agreement made by her which would plainly refer to such provisions. As was recently said by the Court of Appeals in a case involving the question of the effect to be given to the language contained in an extension agreement (Metzger v. Nova Realty Co., 214 N. Y. 26, 31, 107 N. E. 1027), if the intention of the parties had been what the plaintiff contends it was, more apt language would have been used in the agreement; but the language that was used is not susceptible of such a construction as the plaintiff contends for. It might, furthermore, be pointed out that by its terms the provision in the bond which is sought to be made binding on the defendant Wicks is made to apply to the original bondsmen; the language being, "the above-mentioned obligors shall continue liable." This circumstance strengthens the conclusion indicated above.

My conclusion is that the plaintiff is entitled to the usual judgment of foreclosure and sale, and also to judgment for any deficiency that may arise upon the sale of the mortgaged premises against the defendants Eugenie Rothschild, individually, and the executors of the last will and testament of Ludwig Rothschild, deceased, and the Wyckoff Holding Company, with costs, and an additional allowance of $200. The judgment should also provide that the amended and supplemental complaint be dismissed as to the defendant Lily D. Wicks upon the merits, with costs.

The request for findings of the respective parties have been passed upon as indicated upon the margins thereof. Submit for my signature, upon two days' notice of presentation, a decision embodying without change of language all findings made by me, with proof of service.